STATE OF NORTH CAROLINA v. RODERICK MAURICE FORNEY

No. 25A83

(Filed 10 January 1984)

1. **Burglary and Unlawful Breakings § 5.2— first degree burglary—offense during nighttime—insufficient evidence**

The State's evidence was insufficient to show that the breaking and entering of the victim's home occurred during the nighttime so as to support conviction of defendant for first degree burglary where it tended to show only that the victim's body was seen by two school children who reported what they had seen to the school principal sometime after 7:30 in the morning; the victim was wearing pajamas and was barefooted; and nonexpert witnesses who examined the body from mid to late morning thought the victim had been dead for several hours.

2. **Criminal Law § 75.7— question not "interrogation"—incriminating response admissible**

Where the sheriff and defendant passed by a cell in which two persons were being held as the sheriff accompanied defendant out of the jail on the day of defendant's preliminary hearing, the sheriff's question to defendant as to whether he knew "these two fellows" did not constitute "interrogation" of defendant, and defendant's incriminating response, "Yes, they're the two that was with me when we broke into Miss Newsome's house," was admissible in evidence.

3. **Criminal Law § 102.6— improper argument of facts not in evidence**

In a prosecution for burglary, murder and rape, the district attorney's argument of facts not in the record was so grossly improper as to have called for corrective action by the trial court *ex mero motu* where the State offered virtually no evidence as to what happened on the day that the victim met her

State v. Forney

death, but the district attorney told the jury that defendant and three others, acting in concert, decided to break into the victim's home in order to steal; that all four men entered the home in the still of the night and found the victim asleep in her bed; that they dragged her out of bed and out of the house; that the victim attempted to beat off her attackers with a rake; that she was raped; and that she prayed for death because of the brutal attack on her.

**4. Homicide § 21.6— felony murder—insufficient evidence of underlying felony**

Where defendant was tried for first degree murder under the felony murder rule, and the evidence was insufficient to sustain a conviction of the underlying felony of burglary, the judgment of conviction of first degree murder must also be reversed.

**5. Rape and Allied Offenses § 5— insufficient evidence of defendant's participation in rape**

While the evidence established that defendant was present and had knowledge of a sexual assault by others, the evidence was insufficient to establish that defendant participated in any sexual assault or that he aided or abetted or was acting in concert with the others in committing the assault so as to support defendant's conviction of rape where it tended to show only that defendant made the statement that the others threw him on top of the victim but "he didn't do nothin'."

BEFORE *Thornburg, J.*, at the 18 October 1982 Criminal Session of Superior Court, RUTHERFORD County, defendant was convicted of first degree murder, first degree burglary, and second degree sexual offense. From a sentence of life imprisonment for first degree murder, defendant appeals pursuant to G.S. § 7A-27(a). Defendant's motion to bypass the Court of Appeals on the burglary and sex offense convictions, for which he received sentences of fifteen and twelve years respectively, was allowed 17 August 1983. Heard in the Supreme Court on 13 December 1983.

Defendant's convictions arose out of the 8 January 1982 murder of eighty-eight year old Nannie Newsome, a retired schoolteacher and long-time resident of Union Mills. For the reasons set forth below, we find insufficient evidence to support these convictions.

*Rufus L. Edmisten, Attorney General, by Isaac T. Avery III, Special Deputy Attorney General, for the State.*

*Ann B. Petersen, Assistant Appellate Defender, Office of the Appellate Defender; and James R. Glover, University of North Carolina School of Law; Attorneys for defendant-appellant.*

MEYER, Justice.

Defendant contends that the evidence at trial was insufficient to permit a rational trier of fact to find the defendant guilty of any of the offenses charged. At the close of the State's evidence, the defendant moved to dismiss the charges against him. His motion was denied. We must therefore consider whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser included offense, and (2) of defendant's being the perpetrator of such offense. The test of whether the evidence is sufficient to withstand a motion to dismiss is whether a reasonable inference of defendant's guilt can be drawn from the evidence. The evidence may be circumstantial or direct, and must be considered in the light most favorable to the State and the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom. *State v. Lowery*, 309 N.C. 763, 309 S.E. 2d 232 (1983).

In order to make our determination, it is necessary to review, in some detail, the testimony of every witness at trial.

Regan Clark, principal at Union Mills Elementary School, testified that "sometime after 7:30 on the morning of 8 January," he responded to a report from two students who had seen someone lying beside a building on property adjacent to the schoolyard. There he discovered the body of Nannie Newsome. He testified that he "reached down and touched her and she felt like she had probably been dead for several hours." The body was lying beside a building located approximately 150 feet northwest of Miss Newsome's home. Miss Newsome was wearing pajamas. The witness noticed blood stains on the pajamas and blood on the victim's feet, knees, face and hands. Her body was lying face down on top of a small garden rake.

Woodrow Fountain testified that he had known the victim since 1936 and was a close friend. He described the victim as active for her age. She had never been married and she lived alone. Mr. Fountain last saw Nannie Newsome three days prior to the murder when Miss Newsome had driven over to his house for a visit.

Horton Landreth, the Rutherford County coroner, testified that he examined Miss Newsome's body at noon on 8 January.

"The body was cold." He checked for vital signs and found none. He observed "numerous abrasions about the toes, knees, arms, hands and there was a bruise or contusion on the right side of her neck." Mr. Landreth entered the Newsome residence where he noted that the screen on the porch was torn and pushed out and the kitchen door had been broken. Debris from the lock on the door and parts of the door were scattered about the kitchen floor.

Gary White, a member of the Rutherford County Emergency Medical Service, also examined the body at the scene. When asked if he checked for vital signs, he stated that she "evidently had been in this condition quite a few hours, so there were no vital signs."

The investigating officer, Thomas Johnson, testified as to the condition and location of the body and as to the evidence of a break-in through the porch and kitchen doors of Miss Newsome's home.

Guy Thompson, a resident of Union Mills, testified that he had known the victim since the 1920's. Miss Newsome was a retired schoolteacher and house mother. Mr. Thompson testified that the defendant and his brother lived approximately a quarter of a mile from Nannie Newsome's house; and that Chris Hunt, Lester Flack and Richard Flack, also implicated in the murder, all lived within approximately a mile from the victim's home. Mr. Thompson also described the condition of Miss Newsome's body and observed that the door to her kitchen had been "busted in."

The State introduced into evidence the testimony of Dr. Mary Christine Steuterman, the Assistant Chief Medical Examiner for the State of North Carolina, which testimony was given during the trial of Chris Hunt. Dr. Steuterman's examination of the victim's body on 9 January revealed evidence of manual strangulation, superficial lacerations and abrasions on the face, torso, arms, legs and feet, broken bones and evidence of sexual assault "with tears in the vaginal canal and bruises in the vaginal area." In the witness's opinion "there was penetration of the vaginal canal prior to death." Dr. Steuterman testified that in her opinion Miss Newsome had died of a heart attack "during manual strangulation and rape." On cross-examination Dr. Steuterman testified that the autopsy examination did not reveal the presence of sperm. She agreed that in the absence of sperm,

penetration could have been by some object other than a human organ.

Roosevelt Davis shared a cell with the defendant at the Rutherford County jail. He testified that he heard the defendant tell a group of white prisoners that he "was in there for killing a bitch." When Davis cautioned the defendant to be quiet, defendant answered "I don't give a damn, I'll do my time." Defendant told Davis that Lester Flack had strangled Miss Newsome; that Chris Hunt, Lester and Richard Flack had raped Miss Newsome; and that Lester Flack had taken something from Miss Newsome's house, but the defendant didn't know what it was. Defendant stated that Chris, Lester and Richard had thrown him down on top of Miss Newsome but he "didn't do nothin'." In corroboration, Gary Church was called to testify that he had witnessed a statement made by Roosevelt Davis. The statement recited essentially the same facts to which Davis testified at trial.

Finally, Damon Huskey, the Sheriff of Rutherford County, testified that as he accompanied defendant out of the jail on the day of defendant's preliminary hearing, they passed by the cell in which Lester and Richard Flack were being held. Sheriff Huskey asked the defendant "Do you know these two fellows?" Defendant replied, "Yes, they're the two that was with me when we broke into Miss Newsome's house."

The defendant presented no evidence.

[1] It is clear from the record that the State has failed to establish an essential element of first degree burglary—that the breaking and entering into Miss Nannie Newsome's house took place during the nighttime hours. Assuming that Miss Newsome's death occurred during the course of the break-in, there is no evidence as to the time of death. Taking the evidence in the light most favorable to the State, it can be assumed only that the crimes occurred sometime after the victim was seen by Mr. Fountain three days earlier and before the body was seen by two school children on the morning of 8 January. The fact that she was found clothed in pajamas and barefooted leaves the time of the entry of the home and the time of her death entirely in the realm of speculation and conjecture. Witnesses who examined the body from mid to late morning testified that the body was "cold." It had "evidently . . . been in this condition quite a few hours,"

and it "felt like [Miss Newsome] had probably been dead for several hours." This evidence, from nonexperts, was insufficient to establish that the crimes, including Miss Newsome's death, occurred during the nighttime hours. When the State fails to produce substantial evidence that the offense occurred during the nighttime, a defendant is entitled to have charges of burglary against him dismissed. *State v. Smith*, 307 N.C. 516, 299 S.E. 2d 431 (1983). We therefore reverse defendant's conviction on the burglary charge.

[2] Our decision in this case is not intended to preclude the district attorney from seeking an indictment against the defendant on a charge of felonious breaking or entering. In reaching our decision herein we reject defendant's contention that his statement to Sheriff Huskey, implicating the defendant in the break-in of Miss Newsome's house, was inadmissible. The trial judge, following a voir dire on the admissibility of the statement, concluded that the sheriff's question "Do you know these two fellows?" did not constitute "interrogation." "[T]he definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 302, 64 L.Ed. 2d 297, 308 (1980). We agree with the trial judge that the question propounded by Sheriff Huskey here was not an "interrogation." The circumstances surrounding this statement were as follows: Sheriff Huskey was taking the defendant from the jail to the county courthouse for a preliminary hearing. On their way through the jail they passed by the holding cell which was located across from the door leading from the jail. As the sheriff and the defendant approached the door, they were facing Richard and Lester Flack who were standing at the bars "right at us." As they passed, the sheriff said "Do you know these two fellows?" and the defendant answered as set forth above. No other conversation took place as they passed and they "walked right on out." It is unreasonable to conclude that this casual question to the defendant under these circumstances was knowingly designed to elicit an incriminating response.

Because all of the elements of felonious breaking and entering are present, and absent other error requiring a new trial, we could and would ordinarily remand for resentencing on that offense. *State v. Freeman*, 307 N.C. 445, 298 S.E. 2d 376 (1983);

*State v. Dawkins*, 305 N.C. 289, 287 S.E. 2d 885 (1982). However, here there is other error which mandates a new trial.

[3] It is clear to this Court that in his closing argument the district attorney argued facts not in the record of the evidence before the jury. It may be that some of the facts argued by the district attorney were brought out by him in earlier trials of the other individuals charged in this same crime. Nevertheless, they were not in evidence before the jury in the present case. For the most part, these errors in the district attorney's argument were not objected to at the trial. However, we find them so grossly improper as to have called for corrective action by the trial court *ex mero motu. See State v. Oliver*, 309 N.C. 326, 307 S.E. 2d 304 (1983); *State v. Morgan*, 299 N.C. 191, 261 S.E. 2d 827, *cert. denied*, 446 U.S. 986 (1980).

The State offered virtually no evidence as to what happened on the day that Miss Newsome met her death, yet the district attorney argued a full and detailed account of what happened. He told the jury, in effect, that the defendant, the Flack brothers and Chris Hunt, acting in concert, decided to break into Miss Newsome's home in order to steal; that all four men entered the house in the still of the night and found Miss Newsome asleep in her bed; that they dragged her out of bed and out of the house; that Miss Newsome attempted to beat off her attackers with a rake; that she was raped and that she prayed for death because of the brutal attack on her. These "facts" simply were not in evidence and were nothing more than mere speculation. In fact, in light of our holding today, the only facts "in evidence" of several essential elements necessary to support defendant's conviction for the offenses charged were those supplied by the solicitor in his argument to the jury. While we afford prosecutors great latitude in argument to the jury, it was improper, and in this case prejudicial, to argue facts not in the record of evidence before the jury. *State v. Britt*, 288 N.C. 699, 220 S.E. 2d 283 (1975); *State v. Monk*, 286 N.C. 509, 212 S.E. 2d 125 (1975).

[4] Defendant was tried for first degree murder under the felony murder rule, the underlying felony being first degree burglary. The jury was instructed that, in order to find the defendant guilty of first degree murder, the State was required to prove that Nannie Newsome was killed in the course of the perpetration

or attempted perpetration of the offense of burglary. As we have held that the evidence was insufficient to sustain a conviction of burglary, the judgment of conviction of first degree murder must also be reversed.

With respect to defendant's conviction for second degree sexual offense, we first note that defendant was, in fact, indicted for first degree rape. However, the trial judge instructed as follows:

> The defendant has also been accused of second degree sexual offense. In order for you to find the defendant guilty of second degree sexual offense, the State must prove three things beyond a reasonable doubt.
>
> First, that the defendant engaged in a sexual act with Nanney Newsome.
>
> Second, that the defendant used or threatened to use sufficient force to overcome any resistance that Nanney Newsome might make.
>
> Third, that Nanney Newsome did not consent and it was against her will.
>
> So as to this crime, the Court instructs you that if you find from the evidence and beyond a reasonable doubt, the burden being upon the State of North Carolina to so satisfy you that on or about the 8th day of January, 1982, the defendant, Maurice Forney, acting either by himself or acting together with the Flack brothers and Hunt, engaged in a sexual act with Nanney Newsome by way of penetrating her vaginal area with the penis and that he did so by force or threat of force and that this was sufficient to overcome any resistance which Nanney Newsome might make and that Nanney Newsome did not consent and it was against her will, then it would be your duty to return a verdict of guilty of second degree sexual offense, as charged. However, if you do not so find or have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty under the Bill of Indictment charging the offense of second degree sexual offense.

Thus, it is clear that although purporting to charge on second degree sexual offense, the trial judge described to the jury the

elements necessary to prove rape. However, because of our disposition of this offense on other grounds, we find it unnecessary to address the technical error in the instructions.

[5] The evidence at trial was sufficient to establish the elements of rape. Dr. Steuterman testified that there was evidence of vaginal penetration. Defendant allegedly told Roosevelt Davis that Chris Hunt and the Flack brothers had "raped" Miss Newsome. There is insufficient evidence, however, to establish that the defendant participated in any sexual assault or that he aided and abetted or was acting in concert with Hunt and the Flack brothers in committing the assault. In fact, the only evidence before the jury on this question was the defendant's statement to Roosevelt Davis that Hunt and the Flack brothers threw him on top of Miss Newsome but "he didn't do nothin'." This evidence establishes that defendant was present and had knowledge of the sexual assault. While it is true that it is not necessary for a defendant to do any particular act constituting a part of the crime in order to be convicted of that crime under the principle of acting in concert, so long as he is present at the scene, it is nevertheless necessary that there be sufficient evidence to show he is acting together with another or others pursuant to a common plan or purpose to commit the crime. *State v. Joyner*, 297 N.C. 349, 255 S.E. 2d 390 (1979). The evidence here is insufficient to permit a reasonable inference that the defendant, Hunt and the Flack brothers were *acting together in pursuance of a common plan* to rape or commit a sexual assault on Miss Newsome. In the absence of other evidence, defendant's statement that he was "thrown" on the victim but "didn't do nothin'," tends to be exculpatory with respect to his willingness to participate in or even his knowledge or acquiescence in consummating this offense. Defendant's conviction for second degree sexual offense must be reversed and the judgment thereon vacated.

Counsel have not argued or briefed the question of whether defendant may now be tried on a charge of murder in the second degree, therefore, we do not express any opinion on this issue.

Case No. 82CRS0409—First Degree Burglary—reversed.

Case No. 82CRS0410—Rape—reversed.

Case No. 82CRS0411—First Degree Murder—reversed.