STATE OF NORTH CAROLINA v. LESTER FLACK AND RICHARD FLACK

No. 384A83

(Filed 4 December 1984)

1. **Appeal and Error § 67— retroactive application of controlling decision**

   Because a case had not been decided on direct appeal at the time *State v. Peoples*, 311 N.C. 515, was certified, the holding in *Peoples* was applied retroactively where the admission of hypnotically induced testimony constituted reversible error.

2. **Criminal Law § 87; Witnesses § 7— hypnotically refreshed testimony—inadmissible**

   Under the rule enunciated in *State v. Peoples*, 311 N.C. 515, the admission of hypnotically induced testimony constituted prejudicial error since a reasonable possibility exists that a different result would have been reached had the testimony not been admitted. N.C.G.S. 15A-1443(a).

DEFENDANTS appeal as a matter of right pursuant to G.S. 7A-27(a) from a judgment entered by *Ferrell, J.,* during the 28 February 1983 Session of Superior Court, RUTHERFORD County, sentencing defendants to consecutive life sentences for first degree rape, first degree murder, and first degree burglary.

*Rufus L. Edmisten, Attorney General, by Thomas F. Moffitt, Assistant Attorney General, for the State-appellee.*

*Wayne C. Alexander for defendant-appellant, Lester Flack; Ralph C. Gingles for defendant-appellant, Richard Flack.*

*Ephraim Margolin and Nicholas C. Arguimbau for Amicus Curiae, National Association of Criminal Defense Lawyers and California Attorneys for Criminal Justice.*

*James R. Parish for Amicus Curiae, North Carolina Academy of Trial Lawyers.*

FRYE, Justice.

The primary issue for consideration by this Court is whether the trial court was correct in admitting the hypnotically induced testimony of the prosecution's chief witness. Because of our recent decision in *State v. Peoples*, 311 N.C. 515, 319 S.E. 2d 177 (1984), which resolved this identical issue, we find that the trial court erroneously allowed such hypnotically induced testimony. Furthermore, since this evidence constituted the heart of the State's case, such error constitutes prejudicial error. N.C. Gen. Stat. § 15A-1443(a).

## I.

Miss Nannie Newsome was eighty-eight years old, a retired school teacher, and a respected member of the community of Union Mills, located in rural Rutherford County. On 8 January 1982, her body was discovered near her home. She was clad in bloody pajamas and was lying face down on top of a rake. An autopsy revealed that Miss Newsome had scrapes on her neck, bruises over many parts of her body, severely scraped knees, lacerations in her genital area, and four broken ribs. The cause of death was determined to be a heart attack, resulting from assault in the form of manual strangulation, beating, and sexual assault. Miss Newsome's death caused a wave of anger and revulsion within the Union Mills Community.

The county sheriff, highway patrol, SBI, and other law enforcement agencies secured the crime scene and made a thorough search of the entire area for evidence. The investigation revealed that Miss Newsome's house had been broken into but did not appear to have been ransacked. There were clear imprints of what appeared to be a single set of men's size ten and a half tennis shoes. Bare footprints, later identified as those of Miss Newsome, were also found.

The house was dusted and sprayed for fingerprints. Blood, hair, and fiber samples were taken throughout the house and the field where the body was discovered. Analysis of this physical evidence and comparison fingerprints and hair samples from Lester and Richard Flack failed to show any connection of the items with Lester or Richard Flack. In fact, both parties concede that no physical evidence whatsoever placed either of the defendants at the crime scene.

During the early afternoon of the day the body was discovered, bloodhounds were brought out to track the tennis shoe prints found at the crime scene. Some distance away from the Newsome residence, the dog happened to pass Lester Flack and another man, Herman King, as they jogged down the street. Different versions of the event were presented in court. In the State's version, the dogs lunged toward the men and tried to follow Flack. The State contends that the dog had to be restrained by the dog handler. However, the defendant Lester Flack and Herman King testified that the dog did nothing as it passed within three or four feet of Lester.

Officers of the Rutherford County Sheriff's Department went house to house seeking information from area residents about the crime. Within a day or so after the murder, Otis Forney was taken in for questioning. He lived with his brothers, Bernard, Gilbert, and Maurice, about two-tenths of a mile down a dirt road directly in front of the Newsome residence. While Otis was in custody and still a suspect, the police investigation began to focus on his younger brother, Maurice Forney.

On 21 January 1982, Maurice Forney was taken into custody on the orders of Rutherford County Sheriff Damon Huskey. Originally, he was kept in custody for public intoxication. Police officers questioned Forney, who maintained that he knew nothing about the events concerning Miss Newsome's death, except what he had read in the newspapers and heard through gossip. In fact, for a period of approximately two or three weeks after Miss Newsome's body was found, Maurice Forney stated that he knew nothing of the details of her death. He did state that he was in his car at approximately 12:30 a.m. on 8 January 1982 in front of Miss Newsome's house and "saw a light pop on and someone in her bedroom."

Lester Flack was taken into custody for questioning on the evening of 21 January 1982. He denied any involvement in the events that occurred at Miss Newsome's residence. On 22 January 1982, Lester Flack and Maurice Forney were given voice stress tests, which they were told they had failed. Although Maurice Forney maintained that he knew nothing about the details surrounding Miss Newsome's death, there was testimony that the officers told Forney he was not telling the truth and that he did know about the murder. Warrants charging Maurice Forney and Lester Flack with murder were formally drawn on 23 January 1982. Four days after these two men were charged, Maurice Forney was hypnotized in Charlotte on two separate occasions by Dr. Stann Reiziss, a psychologist and trained hypnotist.

Defendants' transcripts of the video-taped hypnotic sessions revealed that Maurice Forney, while under hypnosis, "zoomed in" on Miss Newsome's house on 8 January where he saw either Lester or Richard Flack through the bedroom window. This was the first time Richard Flack's name was mentioned in connection with the murder. While in a hypnotic trance, Maurice Forney stated that Lester Flack had come to his house, placed Maurice Forney on his shoulders, and jogged to the Newsome residence. Forney also said that Lester Flack had Christoper Hunt across his shoulders during this time. Forney then described how they broke into Miss Newsome's house, carried Miss Newsome out of the house, raped, and murdered her. Subsequently, Forney created different versions of this same story. During trial, there was also abundant evidence presented relating to Maurice Forney's low I.Q. of 74 and history of mental problems.

Thereafter, on 28 January 1982, Richard Flack was arrested without a warrant and served with magistrate's orders charging him with murder, rape, and burglary. A probable cause hearing was conducted on 13 April 1982, and the judge found that probable cause existed as to the charges against each defendant. In May 1982, Christoper Hunt was tried in Rutherfordton, and Maurice Forney testified against Hunt pursuant to a plea bargain with the State. The Flack brothers continued to be held without bond during this time. On 26 July 1982, all charges against each defendant were dismissed without prejudice. Maurice Forney later repudiated his plea bargain and was tried during October

1982 for first degree murder, first degree burglary, and second degree sexual offense.

On 20 October 1982, bench warrants were issued for the defendants, charging them with rape, murder, and burglary. Richard Flack was arrested for the second time on 20 October 1982; Lester Flack was again arrested on 21 October 1982. Defendants' pretrial motions to suppress the testimony of Maurice Forney as being hypnotically induced were denied. During trial Maurice Forney's brother, Nosha, testified that he told Maurice that several days before the break-in Lester Flack had made a statement about robbing or "making a hit" on Miss Newsome. Forney testified that Lester Flack said, "If I don't get a job soon, I'm going to go robbing people." Forney also said Lester Flack threatened him with violence if Forney told anybody what he had said. Lester Flack and others with him during the time these statements were made testified that they considered them to be in jest. Forney's testimony about the events of 8 January 1982 generally paralleled the original version given during the first hypnotic session. However, Forney maintained he knew nothing of the events until he was hypnotized. At the close of the evidence, both defendants renewed their motions to suppress Maurice Forney's testimony and moved that the cases against them be dismissed. The motions were denied.

After a jury trial, the defendants were found guilty in March 1983 of first degree murder, first degree rape, and first degree burglary. They were sentenced to serve consecutive life sentences for each of the three crimes.

Christoper Hunt's convictions were reversed on 20 September 1983. *State v. Hunt*, 64 N.C. App. 81, 306 S.E. 2d 846, *cert. denied*, 309 N.C. 824, 310 S.E. 2d 354 (1983). Maurice Forney's convictions were reversed by this Court in January 1984. *State v. Forney*, 310 N.C. 126, 310 S.E. 2d 20 (1984).

II.

The determinative issue presented by this case is whether hypnotically induced testimony is admissible. This precise question was recently decided by this Court in *State v. Peoples*, 311 N.C. 515, 319 S.E. 2d 177 (1984). In that case we held that hypnotically refreshed testimony is inadmissible in judicial pro-

ceedings. Our decision in *Peoples* explicitly overruled *State v. McQueen*, 295 N.C. 96, 244 S.E. 2d 414 (1978), which had permitted the trial court to admit such hypnotically induced testimony.

[1] Because the present case had not been decided on direct appeal at the time the *Peoples* decision was certified, the holding in *Peoples* will be applied retroactively herein. In applying the new rule retroactively, this Court in *Peoples* adopted a harmless error analysis to "allow us to correct errors in which the truth-seeking process was tainted by hypnotically refreshed testimony while imposing minimal adverse impact on the administration of justice." *Peoples*, 311 N.C. at 535, 319 S.E. 2d at 189. Essentially, this analysis involves a case-by-case determination of whether the trial court, by erroneously admitting hypnotically induced testimony, committed reversible error. If there is a reasonable possibility that the jury would have reached a contrary result had the evidence not been erroneously admitted, then the decision of the trial court must be reversed.

[2] In the present case, the hypnotically induced testimony of Maurice Forney, the State's chief prosecution witness, was admitted in derogation of the rule of inadmissibility enunciated in *Peoples*. There can be no doubt that the erroneous admission of Maurice Forney's testimony constitutes prejudicial error, since a reasonable possibility certainly exists that a different result would have been reached had the testimony not been admitted during defendants' trial. N.C. Gen. Stat. § 15A-1443(a). Defendants raise several additional assignments of error allegedly committed by the trial court. However, we find it unnecessary to address such errors since our ultimate decision rests squarely upon the inadmissibility of the hypnotically induced testimony.

For the foregoing reasons, the judgment of the trial court is hereby vacated and the cause is remanded to the Superior Court, Rutherford County, for a

New trial.