STATE v. LAMBERT

[149 N.C. App. 163 (2002)]

No error.

Judges McCULLOUGH and CAMPBELL concur.

———————

STATE OF NORTH CAROLINA v. PATRICK LAMBERT

No. COA01-164

(Filed 5 March 2002)

## 1. Homicide— second-degree murder—acting in concert—sufficiency of evidence

The trial court did not err by denying defendant's motion to dismiss the charge of second-degree murder based on the theory of acting in concert, because: (1) defendant assaulted the victim by throwing glass bottles at her from a close proximity; (2) although defendant argues that the two other coparticipants' actions in beating the victim with a tree limb were a distinct act separate and apart from the initial bottle-throwing, the beating occurred immediately following the bottle-throwing and in the same location; (3) there was sufficient evidence from which a reasonable jury could conclude that these two acts, rather than being distinct and separate from one another, were part of a general assault on the victim and that the intensified assault by the two coparticipants that culminated in the victim's death was a probable and natural consequence of the initial assault in which defendant actively participated; and (4) defendant afterwards accompanied the two coparticipants to conceal evidence of the crime.

## 2. Evidence— exclusion of coparticipant's plea agreement—impeachment—bias

The trial court did not err in a second-degree murder case by excluding evidence of a plea agreement executed by one of defendant's coparticipants even though defendant sought to use the evidence for impeachment purposes to show that the coparticipant had a plea arrangement with the State and to show the coparticipant's potential bias as a witness, because: (1) the trial court did not prohibit defendant from cross-examining the coparticipant about his plea arrangement, and the judge specifically instructed defense counsel on the proper method for questioning

the witness regarding this information; (2) defense counsel abandoned his line of questioning regarding the plea agreement, and failure to pursue the right to confrontation does not constitute a denial of the right to confrontation; and (3) there was no evidence that the coparticipant was testifying in exchange for a sentence reduction.

3. **Criminal Law— prosecutor's argument—plea agreements of coparticipants—motion for mistrial**

The trial court did not abuse its discretion in a second-degree murder case by denying defendant's motion for a mistrial after the prosecutor improperly stated during closing arguments that two coparticipants who pled guilty to second-degree murder "had the same option that this Defendant had" because the trial court sustained defendant's objection to the statements by the prosecutor and gave a curative instruction to the jury immediately thereafter.

Appeal by defendant from judgment entered 7 June 2000 by Judge Gregory A. Weeks in Robeson County Superior Court. Heard in the Court of Appeals 10 January 2002.

*Attorney General Roy Cooper, by Assistant Attorney General Jeffrey B. Parsons, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Beth S. Posner, for defendant appellant.*

TIMMONS-GOODSON, Judge.

On 7 June 2000, a jury found Patrick Lambert ("defendant") guilty of second-degree murder in the death of Loretta Alexander ("Alexander"). Evidence presented by the State tended to show the following: On 1 July 1998, at approximately 10:30 p.m., defendant joined two men, Everette Watson ("Watson") and Darnell Bethea ("Bethea"), near Canal Street in Fairmont, North Carolina. As the men stood together, Alexander approached Bethea and asked him for drugs. Bethea refused, but Alexander persisted, pulling on Bethea's shirt and pleading with him to give her drugs. Annoyed with her, Watson and Bethea then picked up several glass bottles that littered the ground and started throwing them at Alexander. Watson explained that, "I just threw [the bottles] at her. I got tired of her bugging us." Alexander fell to the ground and pleaded with the men to end their assault. In his statement to police, defendant indicated that

he then "picked up a bottle and threw it at Loretta Alexander and the bottle missed her." Bethea instructed defendant to throw another bottle at Alexander, and defendant complied. All three men stood over Alexander, striking her face and head numerous times with "[o]ver a dozen" glass bottles.

Bethea and Watson then told defendant to help them find a stick. At that point, Watson picked up "a tree branch about four inches thick and four feet long" and struck Alexander three or four times across her back. Watson handed the branch to Bethea, who continued to beat Alexander ten or eleven times, striking her back and the rear of her head. After Bethea finished hitting Alexander, she was still and "not making any noise." Watson pushed Alexander's body with his foot, but she did not move. Defendant accompanied Watson and Bethea to Watson's house, where Watson used a garden hose to clean the bloody tree limb. Bethea also washed the blood off of his legs. Defendant left soon afterwards and went to a friend's house, where he watched television and went to bed.

Watson testified at trial that defendant joined he and Bethea in standing over Alexander's body and "hitting her with the bottles up side [sic] the head," but acknowledged that it was he and Bethea who struck Alexander with the tree limb. Watson added that he and defendant had been drinking beer and smoking marijuana the night of the murder. The State's pathologist testified that Alexander died from a blunt-force injury to her head requiring a great deal of force.

Defendant's statement to police and his testimony at trial were substantially similar to the events as recited *supra*, although defendant denied that any of the bottles that he threw actually struck Alexander. Defendant testified that he was afraid of Bethea, and that Bethea ordered him not to tell anyone what had happened, or "the same thing [would] happen to [defendant]."

The jury found defendant guilty of second-degree murder, and the trial court sentenced him to a minimum term of 151 months' and a maximum term of 191 months' imprisonment. From his conviction and resulting sentence, defendant now appeals to this Court.

Defendant presents three issues for review, arguing that the trial court erred in (1) denying defendant's motion to dismiss; (2) excluding evidence of a plea agreement; and (3) denying defendant's motion for a mistrial. Upon review of the record and arguments by counsel, we find no error by the trial court.

**[1]** Defendant argues that the trial court erred in denying his motion to dismiss the charge of second-degree murder against him. Defendant maintains there is insufficient evidence from which a reasonable jury could conclude that defendant acted in concert with Watson and Bethea in the beating death of Alexander. We disagree.

Upon a motion to dismiss in a criminal action, the trial court must view all of the evidence in the light most favorable to the State. *See State v. Pierce*, 346 N.C. 471, 491, 488 S.E.2d 576, 588 (1997). Contradictions or discrepancies in the evidence must be resolved by the jury, and the State should be given the benefit of any reasonable inference. *See State v. Brown*, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984). The trial court must then decide whether there is substantial evidence of each element of the offense charged. *See State v. Smith*, 300 N.C. 71, 78, 265 S.E.2d 164, 169 (1980). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 78-79, 265 S.E.2d at 169.

In the instant case, defendant was charged with second-degree murder under the theory of acting in concert. The doctrine of acting in concert states that where

"two persons join in a purpose to commit a crime, each of them, if actually or constructively present, is not only guilty as a principal if the other commits that particular crime, but he is also guilty of any other crime committed by the other in pursuance of the common purpose . . . or as a natural or probable consequence thereof."

*State v. Barnes*, 345 N.C. 184, 233, 481 S.E.2d 44, 71 (1997) (quoting *State v. Westbrook*, 279 N.C. 18, 41-42, 181 S.E.2d 572, 586 (1971)), *cert. denied*, 523 U.S. 1024, 140 L. Ed. 2d 473 (1998). In *Barnes*, our Supreme Court held that a finding that the accomplice individually possessed the *mens rea* to commit the crime is not necessary to convict a defendant of premeditated and deliberate murder under a theory of acting in concert. *See Barnes*, 345 N.C. at 233, 481 S.E.2d at 71. Thus, "if two or more persons are acting together in pursuit of a common plan or purpose, each of them, if actually or constructively present, is guilty of any crime committed by any of the others in pursuit of the common plan." *State v. Laws*, 325 N.C. 81, 97, 381 S.E.2d 609, 618 (1989), *sentence vacated on other grounds*, 494 U.S. 1022, 108 L. Ed. 2d 603 (1990). While a person may be either actually or constructively present at the scene, "[a] person is constructively present during the commission of a crime if he is close enough to provide

assistance if needed and to encourage the actual execution of the crime." *State v. Gaines*, 345 N.C. 647, 675-76, 483 S.E.2d 396, 413, *cert. denied*, 522 U.S. 900, 139 L. Ed. 2d 177 (1997); *see also State v. Willis*, 332 N.C. 151, 175, 420 S.E.2d 158, 169 (1992) (holding that, although the defendant was sixty-five feet away from the attack on the victim and inside the fence that enclosed her yard, there was nevertheless sufficient evidence for the jury to conclude that the defendant was actually and constructively present where she was able to witness the attack and the victim was close enough to call to her for assistance).

Defendant argues that there was insufficient evidence to establish that defendant was acting together with Watson and Bethea pursuant to a common purpose to kill Alexander. Defendant notes that the State presented no evidence that Watson and Bethea communicated to defendant their intent to beat Alexander with the tree limb. Defendant further asserts that Alexander's death was not a natural or probable consequence of the assault in which he participated. We disagree.

In the instant case, there was sufficient evidence from which a reasonable jury could conclude that defendant acted in concert with Watson and Bethea in the murder of Alexander. Watson testified that

> [Bethea] started picking up some [bottles] and started throwing and then [defendant] picked up some [bottles] and started throwing. [Alexander] fell and we all went up there and started hitting her with the bottles up side [sic] the head. Then [Bethea], he picked up like a limb, like, and started hitting her with it and I started hitting her with it. And we all left and left her there.

The evidence clearly establishes that defendant assaulted Alexander by throwing glass bottles at her from a close proximity. Although defendant argues that Bethea and Watson's actions in beating Alexander with a tree limb were a "distinct act," separate and apart from the initial bottle-throwing, the evidence shows that the beating occurred immediately following the bottle-throwing and in the same location. Thus, there was no separation by either time or proximity between the bottle-throwing and the beating with the tree limb. A reasonable jury could conclude that these two acts, rather than being distinct and separate from one another, were part of a general assault on Alexander, and that the intensified assault by Watson and Bethea that culminated in Alexander's death was a probable and natural consequence of the initial assault in which defendant actively participated.

STATE v. LAMBERT

[149 N.C. App. 163 (2002)]

We are unpersuaded by the cases cited by defendant in support of his argument that he did not act in concert with Watson and Bethea, and that Alexander's death was not a natural or probable consequence of the bottle-throwing. In *State v. Ikard*, 71 N.C. App. 283, 321 S.E.2d 535 (1984), the evidence showed that the defendant stood approximately twenty to twenty-five feet away from his companions while they robbed the victim. The defendant did not participate in the robbery, "[n]or was there any evidence tending to show that [the] defendant encouraged the other men in the commission of the crime, or that he by word or deed indicated to them that he stood prepared to render assistance." *Ikard*, 71 N.C. App. at 286, 321 S.E.2d at 537. Similarly, in both *State v. Gaines*, 260 N.C. 228, 132 S.E.2d 485 (1963), and *State v. Forney*, 310 N.C. 126, 310 S.E.2d 20 (1984), there was no evidence of the defendants' involvement in the respective crimes beyond being merely present and having knowledge of the criminal acts.

Unlike the evidence in the above-cited cases, the evidence in the instant case, taken in the light most favorable to the State, reveals that defendant was an active participant in the assault on Alexander that ended in her death. Defendant stood with Watson and Bethea over Alexander while she lay prostrate on the ground, and he threw at least two bottles at her from a close proximity. He remained nearby while Watson and Bethea beat Alexander with a tree limb as she pleaded for her life, and afterwards, defendant accompanied the two men to Watson's house, where they concealed the evidence of the crime. We conclude that the above-stated evidence sufficiently supports the theory that defendant acted in concert with Watson and Bethea to commit second-degree murder. *See State v. Wilson*, 354 N.C. 493, 507-08, 556 S.E.2d 272, 282 (2001); *State v. Golphin*, 352 N.C. 364, 456-60, 533 S.E.2d 168, 228-30 (2000), *certs. denied*, 532 U.S. 931, 149 L. Ed. 2d 305 (2001). Because there was sufficient evidence to support the charge of second-degree murder, the trial court properly denied defendant's motion to dismiss, and we therefore overrule defendant's first assignment of error.

[2] By his second assignment of error, defendant contends the trial court erred by excluding evidence offered by defendant for the purpose of impeaching a witness. Specifically, defendant argues that the plea form executed by Watson was admissible to show that Watson had a plea arrangement with the State and his potential bias as a witness. Defendant maintains that exclusion of this evidence was fundamental error by the trial court, requiring a new trial.

**STATE v. LAMBERT**

[149 N.C. App. 163 (2002)]

At trial, defense counsel attempted to impeach Watson's testimony by cross-examining him with regard to details of his plea agreement with the State. After viewing a copy of his plea agreement, Watson agreed that he had pled guilty to second-degree murder. The trial court sustained the State's objections to further questions based on details of the document, however, on the grounds that the document had not been offered into evidence. Outside the presence of the jury, defense counsel confirmed that he was offering the plea agreement for purposes of impeachment. The trial court informed defense counsel that, "You can show it to [Watson]; you can ask him if it refreshes his recollection about what he did or what he said, and then you can ask him the direct question: Isn't it true that." Defense counsel never resumed his line of questioning, however.

Defense counsel later attempted to offer the plea agreement into evidence, arguing that it revealed bias on Watson's part because "it show[ed] that [Watson] got consideration" in exchange for his testimony. After examining the document, the trial court concluded that the plea form was irrelevant, as it did not "provide that [Watson] was allowed to plea[d] to the lesser charge in exchange for his testimony." The trial court also noted that Watson testified that he had requested a sentence reduction in exchange for his testimony, but had not received such a reduction.

Defendant argues that the trial court's actions in sustaining the State's objections during defense counsel's cross-examination of Watson and in excluding the plea agreement from evidence violated defendant's constitutional right to confrontation and prejudiced his case. We cannot agree. The trial court did not prohibit defendant from cross-examining Watson about his plea arrangement; in fact, the judge specifically instructed defense counsel on the proper method for questioning the witness regarding this information. Nevertheless, defense counsel abandoned his line of questioning concerning the plea agreement. Failure to pursue the right to confrontation does not constitute a denial of the right to confrontation.

Moreover, despite defendant's assertions to the contrary, there was no evidence that Watson was testifying in exchange for a sentence reduction pursuant to North Carolina General Statutes section 15A-1054. The plea agreement at issue did not indicate that Watson received a reduced sentence or other consideration for his testimony; rather, it merely stated that "upon plea of second-degree murder, the defendant shall receive an active sen-

**STATE v. LAMBERT**

[149 N.C. App. 163 (2002)]

tence of 125 months minimum and 150 months maximum." Further, Watson testified during cross-examination that he received no consideration in exchange for his testimony:

Q [Defense counsel]: And you agreed to testify in return for getting consideration on your sentence; is that correct?

A [Watson]: I wanted it but I couldn't get it, so . . . .

Q: Sir?

A: I testified anyway.

Q: You expect to get that, don't you?

A: No. [The prosecutor] said he couldn't get it for me.

Q: You want that, don't you?

A: I did, but I can't get it.

Q: He told you that?

A: That's what he told me.

Because the plea agreement did not show that Watson received any type of consideration for his testimony, the trial court properly excluded the evidence as irrelevant. *See* N.C. Gen. Stat. § 8C-1, Rule 402 (1999). We therefore overrule defendant's second assignment of error.

[3] In his final assignment of error, defendant argues the trial court erred by denying his motion for a mistrial after the State in its closing argument made the following statement:

[Prosecutor]: [Defense counsel] wants to say, "Well, you know, these guys, they've pled guilty to second-degree murder."

Mr. Watson and Mr. Bethea had the same option that this Defendant had—

[Defense counsel]: Objection.

[The Court]: Sustained. Sustained.

The trial judge thereafter instructed the jury as follows:

Members of the jury . . . counsel for the State . . . . argued to you that Mr. Watson and Mr. Bethea had the same opportunity as

**STATE v. LAMBERT**

[149 N.C. App. 163 (2002)]

the Defendant. I instruct you that that's not a proper argument. You may not consider that argument.

> As I instructed you at the outset of these proceedings, the Defendant, by his plea of not guilty, has answered and denied . . . the allegation involved in this case . . . . And I instruct you that any reference in argument to Mr. Watson or Mr. Bethea, or any opportunities they may have had, have no bearing on the issue or issues before you in this case.

Defendant argues that the prosecutor's statement to the jury irreparably prejudiced his ability to receive a fair trial. We cannot agree.

"It is within the trial court's discretion to determine whether to grant a mistrial, and the trial court's decision is to be given great deference because the trial court is in the best position to determine whether the degree of influence on the jury was irreparable." *State v. Hill*, 347 N.C. 275, 297, 493 S.E.2d 264, 276 (1997), *cert. denied*, 523 U.S. 1142, 140 L. Ed. 2d 1099 (1998). A mistrial should only be granted when there are improprieties of such magnitude and gravity that the defendant cannot receive a fair trial and impartial verdict. *See State v. Taylor*, 117 N.C. App. 644, 653-54, 453 S.E.2d 225, 231 (1995). Here, the trial court sustained defendant's objection to the statements by the prosecutor and gave a curative instruction to the jury immediately thereafter. We detect no abuse of discretion by the trial court in denying defendant's motion for a mistrial, and we therefore overrule defendant's final assignment of error.

In conclusion, we hold defendant received a fair trial, free from error.

No error.

Judges MARTIN and BRYANT concur.