STATE OF NORTH CAROLINA v. EDWARD EARL VICK

No. 7A94

(Filed 8 September 1995)

**1. Judges, Justices, and Magistrates § 27 (NCI4th)— first-degree murder—judge's acceptance of codefendant's guilty verdict—no recusal**

The trial court did not err by not recusing itself from a first-degree murder prosecution where the judge had accepted a guilty verdict in the trial of defendant's codefendant and found coercion as a mitigating factor, but found that the aggravating factors outweighed the mitigating factors. Defendant did not present substantial evidence of partiality or evidence that there was an appearance of partiality on the part of the judge. The judge was not the impetus of the filing of charges against defendant; the judge made no comments on the credibility of any witnesses or the validity of the charges against defendant; the recording of the guilty verdict was the jury's conclusion on the evidence; and the acceptance of the verdict, in the absence of any contentions that the verdict was improper, creates no grounds for recusal. Finally, defendant presented no compelling reason to justify a distinction between high-profile cases and other cases and requiring a judge to recuse himself from all other cases of codefendants in high-profile capital cases.

**Am Jur 2d, Judges §§ 86 et seq.**

**2. Evidence and Witnesses §§ 1037, 765 (NCI4th)— first-degree murder—statement by defendant—self-serving—door not opened by State**

There was no error in a first-degree murder prosecution where the court did not allow defendant to present an exculpatory statement made by defendant to an officer where defendant contended that the State opened the door when it introduced defendant's earlier remarks into evidence. Although it has been held that if the State submits parts of a defendant's confession the defendant must be allowed to present other parts of the statement even though they are self-serving, defendant's remarks here constituted two verbal transactions. The first remarks took place while defendant was being processed and fingerprinted, were unsolicited, and the conversation was terminated by the officer. The second remarks were made after a period of time had elapsed, after defendant had left one room and entered another, and after defendant had been given *Miranda* warnings and interrogation had begun.

**Am Jur 2d, Evidence § 873.**

**3. Evidence and Witnesses §§ 1037, 765 (NCI4th)— first-degree murder—statement by defendant—self-serving—door not opened by State**

There was no error in a first-degree murder prosecution where the court did not allow defendant to present an exculpatory self-serving statement made by defendant where defendant contended that the State opened the door by asking the officer about earlier remarks. The State does not open the door for the introduction of another statement made later in the day by simply introducing an earlier statement by a defendant; a party is only entitled to introduce evidence that would have been inadmissible if offered initially where the other party introduces evidence as to a particular fact that is covered by the subsequent statement.

**Am Jur 2d, Evidence § 873.**

**4. Evidence and Witnesses § 1240 (NCI4th)— first-degree murder—defendant's statement at police station—not interrogation**

The trial court did not err in a first-degree murder prosecution in the admission of statements made by defendant while he was being processed where the evidence showed that there is no

STATE v. VICK

[341 N.C. 569 (1995)]

material conflict as to whether defendant was being interrogated during his fingerprint processing. An officer simply told defendant that he would talk to him later and answer any questions he might have and, even after defendant made these remarks, told him that he would talk with defendant later. The officer's comments were not intended nor reasonably expected to elicit an incriminating response.

Am Jur 2d, Evidence §§ 708 et seq., 749, 750.

What constitutes "custodial interrogation" within rule of *Miranda v. Arizona* requiring that suspect be informed of his federal constitutional rights before custodial interrogation. 31 ALR3d 565.

5. Evidence and Witnesses § 2284 (NCI4th)— first-degree murder—pathologist's qualifications—suffering of victim

The trial court did not err in a first-degree murder prosecution by allowing the State's pathologist to testify during the guilt phase of the trial as to the pain and suffering caused by the wounds to the victims. An expert witness qualified in the field of forensic pathology is qualified to testify about the pain caused by a traumatic injury.

Am Jur 2d, Expert and Opinion Evidence §§ 264-268.

6. Evidence and Witnesses § 191 (NCI4th)— first-degree murder—pathologist's testimony—suffering of victim

The trial court did not err in a first-degree murder prosecution by admitting testimony from the State's pathologist during the guilt phase concerning the pain and suffering caused by the wounds to the victims. Expert testimony concerning the pain and suffering of the victims in a first-degree murder case is relevant and admissible to assist the jury in ascertaining whether the defendant was acting with premeditation and deliberation.

Am Jur 2d, Evidence § 559.

Admissibility, in prosecution for assault or similar offense involving physical violence, of extent or effect of victim's injuries. 87 ALR2d 926.

7. Evidence and Witnesses § 1671 (NCI4th)— photograph of vehicle—foundation for admission

The trial court did not err in a first-degree murder prosecution by admitting photographs of defendant's automobile where

STATE v. VICK

[341 N.C. 569 (1995)]

defendant contended that the witness's testimony did not indicate that she had any knowledge regarding the identity of the automobile other than that which she gained from viewing the photograph. A photograph depicting an automobile that the witness said "looked like" the defendant's automobile was sufficient to authenticate the photograph for the purpose of illustrating the witness's testimony. The fact that the witness stated that the automobile resembled a Toyota while defendant's automobile was a Volkswagen goes to the credibility of the evidence and not to its admissibility.

**Am Jur 2d, Evidence §§ 960-974.**

**Authentication or verification of photograph as basis for introduction in evidence. 9 ALR2d 899.**

### 8. Homicide § 226 (NCI4th)— first-degree murder—evidence of defendant as perpetrator—sufficient

The trial court did not err by denying defendant's motion to dismiss a first-degree murder prosecution for insufficient evidence placing him at the scene of the crime where the State's evidence at trial tended to show that defendant's automobile was parked at Vanessa Craddock's (the victim's) house minutes before the shootings; defendant was seen striking the victim immediately before shots were heard; several shots were heard and her son was heard crying; both the victim and her son were found dead from gunshot wounds; after the shots were heard, the blue automobile alleged to be defendant's sped from the victim's residence; and defendant told another woman that he had just come from "Van's" when he arrived at her residence minutes after the murders were committed.

**Am Jur 2d, Evidence §§ 560-576.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from two judgments imposing sentences of life imprisonment entered by Duke, J., at the 28 July 1993 Criminal Session of Superior Court, Wayne County, upon verdicts of guilty of first-degree murder. Heard in the Supreme Court 12 May 1995.

*Michael F. Easley, Attorney General, by Thomas F. Hicks, Special Deputy Attorney General, for the State.*

*Jeffrey B. Foster for defendant-appellant.*

**STATE v. VICK**

[341 N.C. 569 (1995)]

FRYE, Justice.

In a capital trial, Edward Earl Vick, defendant, was convicted by a jury on two counts of first-degree murder. Following a capital sentencing proceeding conducted pursuant to N.C.G.S. § 15A-2000, the jury recommended and the trial court imposed two life sentences, to be served consecutively.

Defendant appeals to this Court making six assignments of error. We reject these assignments and uphold defendant's convictions and sentences.

The State's evidence at trial tended to show the following facts and circumstances: On 24 June 1987, Vanessa Craddock and her seven-year-old son, Rasean Rouse, were shot and killed at their home at 916 Fifth Street in Goldsboro, North Carolina. At the time of the murders, Desiree Davis lived next door in Apartment 918 with her children Demetrick, age eleven; Chris, age seven; and Ronique, age four. The Davis' apartment and Vanessa Craddock's apartment shared a common wall between the living rooms and kitchens of both residences.

On the day that Vanessa and Rasean were killed, Chris and Rasean played in the backyard of their apartments after they had eaten dinner. Shortly before dark, Vanessa called out to Rasean and told him that he had to come in to take a bath. Rasean went into his apartment, while Chris stayed outside. A few minutes later, Rasean came to the back door of his apartment. Chris approached Rasean, looked into the apartment, and saw defendant slap Vanessa three or four times. Rasean told Chris that defendant was slapping his mother.

Chris went next door to the Davis apartment, entered the back door, and began to get some water from the kitchen faucet. As he was running the water, Chris heard a noise coming from Vanessa's apartment that sounded like "cabinets slamming." He then went into the living room of the Davis apartment.

As it began to turn dark, Demetrick Davis went into his apartment. Rasean was already in his apartment. Demetrick lay down on the couch in his living room and began to watch television. Desiree was lying on a couch placed against the wall opposite him. Through his front window, Demetrick saw the headlights of an approaching automobile that pulled between the Davis apartment and Vanessa's apartment. Within seconds, an automobile door slammed. A few minutes later, Demetrick heard about three gunshots coming from

Vanessa's apartment. His mother commented that the shots sounded like cabinet doors slamming. Then they heard Rasean begin crying and say, "no, Mommie, no, no, Mommie, no!" Thereafter, two more shots rang out. The front door to Vanessa's apartment slammed and, approximately fifteen to twenty seconds later, Demetrick heard an automobile squealing tires as it sped away.

Approximately two minutes after the automobile pulled away from the parking lot, Wanda Broadhurst knocked on Desiree Davis' apartment door and everyone ran outside. Demetrick ran toward another apartment and found Rasean lying on a neighbor's walkway in the fetal position. Rasean was surrounded by blood, and a trail of blood led from Rasean's body to his apartment. Everyone then ran to John Sykes' apartment where Desiree Davis arrived moments later and announced that Vanessa Craddock was dead.

At approximately 9:00 p.m., Lillie Brown Artis was sitting in her automobile in the parking lot of the apartments on Fifth Street. Ms. Artis noticed a small blue automobile parked beside Vanessa's automobile in front of Apartment 916. She later identified the automobile as similar to the one operated by defendant. Suddenly, the blue automobile sped from the apartment, through the parking lot and down Fifth Street. Three to five minutes later, Ms. Artis heard Mrs. Sykes yelling that there was a little boy lying on a neighbor's porch. Someone called the rescue squad, and shortly thereafter police officers and rescue personnel arrived.

Upon arriving at the scene, police officers found the body of Rasean on the porch outside of Apartment 908. Rasean was clad only in white undershorts and covered with fresh blood. He had no vital signs. The body of Vanessa was discovered on the floor in the back bedroom of her apartment. Blood was coming from her head and she showed no vital signs.

In the living room of the apartment, there was a large pool of blood. There was also a trail of blood leading into the kitchen. The blood evidence suggested that Rasean had been shot in the kitchen, then walked into the living room where he hit the wall. He then fell onto the floor where the large pool of blood formed. After a few seconds, he got back up and headed out the front door. He walked about one hundred yards and collapsed on a neighbor's front porch.

Dr. John Butts, Chief Medical Examiner for the State of North Carolina, performed autopsies on Vanessa and Rasean. He observed

four gunshot wounds to Vanessa's head and one defensive gunshot wound to her left hand. The nature of the wound to her hand and the wound to the left side of her head suggested that the gun was inches away from her body when these shots were fired. Vanessa died as a result of multiple gunshot wounds.

Rasean had a gunshot wound to the left side of his head. The nature of this wound suggests that it was made with the gun inches from his head. After the bullet entered his temple, it passed through his head and struck his carotid artery. The hemorrhaging from this wound caused his death.

On the night of the murders, defendant, Collette Barnes, and their child, Christopher, arrived at Joyce Lofton's house in Barnes' blue Volkswagen automobile. Testimony at trial showed that by the shortest route one can drive from Vanessa's house to Lofton's house in less than three minutes. Defendant stated that they had been at "Van's" house and wanted to play cards but that they did not have a foursome. At defendant's request, Lofton and Barnes went to the grocery store to buy beer while defendant showered. Lofton and Barnes returned, and the three adults played cards until about eleven or eleven-thirty that night.

When defendant was arrested in February 1992, he called Ms. Lofton from the Wayne County jail and told her that she was his alibi. He also told her that he had arrived at her house before nine o'clock on the night Vanessa was murdered. He instructed her to call his lawyer.

Defendant presented no evidence at trial.

[1] For his first assignment of error, defendant argues that his motion requesting that the trial judge recuse himself from defendant's trial was improperly denied. He asserts that Judge Duke's acceptance of the guilty verdict in State v. Collette Barnes (91CRS16388)—the trial of defendant's codefendant, as well as a finding made by Judge Duke during the sentencing hearing of the Barnes case, created an adequate showing that Judge Duke should have recused himself. We disagree.

Collette Barnes was tried prior to defendant's trial on two counts of murder and two counts of accessory after the fact of murder. Judge Duke presided over that trial. The jury found Barnes guilty of two counts of accessory after the fact. At Barnes' trial, her attorneys offered evidence indicating that she was under the domination of defendant and that she committed these acts because of duress and coercion caused by defendant. In the sentencing phase, Judge Duke

found coercion as a mitigating factor but found that the aggravating factors outweighed the mitigating factors. Accordingly, Judge Duke sentenced Barnes to ten years' imprisonment on each count, the maximum sentence possible for each offense.

At the start of defendant's trial, defendant moved that Judge Duke recuse himself. Judge Duke heard the arguments and ordered that Judge Wright hear the motion for recusal. A hearing was held before Judge Wright on 7 July 1993 and defendant's motion for recusal was denied. In making this decision, Judge Wright distinguished the instant case from *State v. Fie*, 320 N.C. 626, 359 S.E.2d 774 (1987). Defendant contends that the principles articulated by this Court in *Fie* require that Judge Duke should have been recused. We disagree.

In *Fie*, this Court found that Judge Burroughs should have recused himself. Judge Burroughs presided over the trial of Donna Rowe. After the case, he wrote a letter to the district attorney suggesting that criminal charges be brought against Floyd Fie and Steve Harverson. The district attorney brought the charges, and Judge Burroughs was assigned both cases. Before trial, both defendants filed motions for recusal of Judge Burroughs, arguing that Judge Burroughs' letter to the district attorney showed the judge's disbelief in defense witnesses in the *Rowe* case—the same witnesses that would testify in the *Fie* and *Harverson* cases. The motion was denied and a divided panel of the Court of Appeals affirmed. This Court reversed the Court of Appeals, stating that, while a judge need not be disqualified from a hearing merely because he presided over the trial of a codefendant, a judge should recuse himself if the defendant presents substantial evidence that the trial judge has such "a personal bias, prejudice or interest that he is unable to rule impartially." *Id.* at 627, 359 S.E.2d at 775. We added that "a party has a right to be tried before a judge whose impartiality cannot reasonably be questioned." *Id.* (citing N.C. Code of Judicial Conduct, Canon 3(c)(1) (1973)).

Defendant here has not presented substantial evidence of partiality or evidence that there was an appearance of partiality on the part of Judge Duke. This case is not similar to *Fie*. Unlike Judge Burroughs, Judge Duke was not the impetus behind the filing of the charges against defendant. Judge Duke made no comments on the credibility of any witnesses or the validity of the charges against defendant.

Defendant contends that Judge Duke showed his lack of impartiality by accepting the jury's verdict in the *Barnes* case because

STATE v. VICK

[341 N.C. 569 (1995)]

implicit in her conviction as an accessory was the assumption that defendant had committed the murders. However, the recording of the guilty verdict was the jury's conclusion on the evidence, not Judge Duke's finding. The judge must accept the verdict unless it is "incomplete, insensible or repugnant." *State v. Hampton*, 294 N.C. 242, 247, 239 S.E.2d 835, 839 (1978). The acceptance of the verdict, in the absence of any contentions that the verdict was improper, creates no grounds for recusal.

Defendant further contends that Judge Duke showed his partiality by finding as a mitigating factor that Barnes was acting under duress. However, Judge Duke was required to find all of the statutory mitigating factors for which there was credible, uncontradicted evidence. *State v. Jones*, 309 N.C. 214, 219, 306 S.E.2d 451, 454 (1983) (holding that "when evidence in support of a particular mitigating or aggravating factor is uncontradicted, substantial, and there is no reason to doubt its credibility, to permit the sentencing judge to simply ignore it would eviscerate the Fair Sentencing Act").

At her trial, Barnes presented credible, uncontradicted evidence that she was acting under duress. Because there was substantial evidence that Barnes was acting under duress, the fact that Judge Duke found duress as a mitigating factor does not in itself suggest partiality. Also, although Judge Duke found duress as a mitigating factor, he did not give the finding much weight. In sentencing Barnes, Judge Duke also found that the aggravating factors outweighed the mitigating factors and imposed the maximum sentences for both counts of accessory after the fact of murder.

Defendant also argues that this Court should draw a distinction between high-profile cases and other cases. Defendant argues that, in high-profile capital cases, a judge should recuse himself from all other cases of codefendants. We have not made such a distinction in the past, and defendant has presented no compelling reason to justify a departure from our precedent.

Defendant's second and fifth assignments of error concern a series of statements made to police officers upon defendant's arrest.

The State elicited evidence at trial that Sergeant Jay Sasser arrested defendant on 5 June 1991 for the murders of Vanessa Craddock and Rasean Rouse. Sergeant Sasser escorted defendant to a room at the Wayne County Sheriff's Department to be processed.

**STATE v. VICK**

[341 N.C. 569 (1995)]

Captain Justin Heath testified on direct examination that, while defendant was being fingerprinted, he approached defendant and told defendant that he would like to talk to him after the fingerprinting was complete. Captain Heath added that he would then answer any questions that defendant may have concerning his arrest. Defendant indicated that he needed to talk to someone. He then said, "I don't understand. Why isn't Collette here. She was there that night with me." After repeating his statement that he would answer defendant's questions when the processing was complete, Captain Heath left the room.

On cross-examination of Captain Heath, defendant attempted to elicit testimony that he was escorted into Heath's office around ten or fifteen minutes after Heath left the processing room. Upon entering Heath's office, defendant was read his *Miranda* rights. After having waived these rights, defendant stated, "This is a mistake." He was then asked if he had an explanation for what happened, and he stated that he did not. The trial court ruled that the statements made in Captain Heath's office were not admissible on cross-examination of Captain Heath.

[2] As defendant's second assignment of error, he contends that the trial court erred in refusing to allow him to present the exculpatory statement made by defendant to Captain Heath after defendant had been Mirandized. Defendant agrees that his remarks to Heath were self-serving declarations and, therefore, would ordinarily be inadmissible. However, defendant contends that the State opened the door to these remarks when it introduced defendant's earlier remarks into evidence. Defendant advances two theories of how the State opened the door to the introduction of the self-serving statements made in Captain Heath's office.

First, defendant contends that the State opened the door because defendant's remarks in the processing room were part of the same statement. He argues that, even though there was a period of time between the remarks, they were part of the same verbal transaction and that they were so close in time that they constituted one verbal transaction. We disagree.

This Court has held that if the State submits parts of a defendant's confession, the defendant must be allowed to present other parts of the statement, although they are self-serving. *State v. Davis*, 289 N.C. 500, 223 S.E.2d 296, *death sentence vacated*, 429 U.S. 809, 50 L. Ed. 2d 69 (1976); *see State v. Watts*, 224 N.C. 771, 32 S.E.2d 348 (1944) (hold-

ing that when the State introduces into evidence a statement made by a defendant, the defendant is entitled to have the rest of the statement introduced). However, these remarks must be part of the same verbal transaction.

Defendant's remarks in the processing room were distinct from his remarks after he had been Mirandized. The first remarks took place while defendant was being processed and fingerprinted. His comments were unsolicited and the conversation was terminated by Captain Heath. The second remarks were made after a period of time had elapsed, after defendant had left one room and entered into another, and after defendant had been Mirandized and an interrogation had begun. Therefore, defendant's remarks constituted two verbal transactions and were not admissible under *Watts* and *Davis.*

[3] Alternately, defendant contends that by asking Captain Heath about the first remarks made while defendant was being processed, the State opened the door to those remarks made in Captain Heath's office. This contention has no merit. This Court has held that by simply introducing into evidence a statement made by a defendant, the State does not open the door for the introduction of another statement made later that day by the defendant. *State v. Lovin,* 339 N.C. 695, 709, 454 S.E.2d 229, 237 (1995) (citing *State v. Weeks,* 322 N.C. 152, 367 S.E.2d 895 (1988)). A party is only entitled to introduce evidence that would have been inadmissible if offered initially where the other party introduces evidence that raises specific issues or raises evidence as to a particular fact that is covered by the subsequent statement. *State v. Albert,* 303 N.C. 173, 177, 277 S.E.2d 439, 441 (1981).

In *Lovin,* the defendant was convicted of first-degree murder. After the murder, Lovin placed two calls to his girlfriend. The State, on direct examination of the girlfriend, introduced the contents of the first conversation. During the first conversation, the defendant stated jokingly that he had "raised a little hell that morning" and started laughing. On cross-examination, the defendant attempted to introduce self-serving statements made by the defendant in the second conversation. During this conversation, defendant told his girlfriend that he had shot a man in self-defense after the man had tried to force him to have sex. This Court held that the content of the second conversation could not be admitted because the State had not opened the door to the introduction of the contents of the second conversation. We stated that subsequent statements are only admissible if the State,

by eliciting testimony from the witness as to the first statement, "raises specific issues or evidence as to a particular fact or transaction" in the subsequent statement. *Lovin,* 339 N.C. at 710, 454 S.E.2d at 237.

In the instant case, the State had not opened the door for the introduction of the comments made after defendant had been Mirandized. The first remarks concerned defendant's request to see Colleen and his comment that they had been together on the night of the murders. The subsequent statement, however, was a statement by defendant that his arrest was a mistake. We reject defendant's second assignment of error.

[4] As his fifth assignment of error, defendant contends that the trial court erred in allowing the introduction of the statements made by defendant to Captain Heath while defendant was being processed. Defendant contends that these statements were made subsequent to his arrest and prior to his being advised of his constitutional right to remain silent. As such, defendant contends that the trial judge should have made specific findings of fact that these comments were voluntary before allowing them to be admitted into evidence at trial.

When the competency of evidence is challenged and the trial judge conducts a *voir dire* to determine admissibility, the general rule is that he should make findings of fact to show the basis of his ruling. *State v. Silver,* 286 N.C. 709, 213 S.E.2d 247 (1975). If there is a material conflict in the evidence on *voir dire,* he must do so in order to resolve the conflict. *State v. Smith,* 278 N.C. 36, 178 S.E.2d 597, *cert. denied,* 403 U.S. 934, 29 L. Ed. 2d 715 (1971). If there is no material conflict in the evidence on *voir dire,* it is not error to admit the challenged evidence without making specific findings of fact, although it is always the better practice to find all facts upon which the admissibility of the evidence depends. *State v. Ladd,* 308 N.C. 272, 302 S.E.2d 164 (1983); *State v. Phillips,* 300 N.C. 678, 268 S.E.2d 452 (1980); *State v. Riddick,* 291 N.C. 399, 230 S.E.2d 506 (1976); *State v. Biggs,* 289 N.C. 522, 223 S.E.2d 371 (1976). In that event, the necessary findings are implied from the admission of the challenged evidence. *State v. Whitley,* 288 N.C. 106, 215 S.E.2d 568 (1975).

The trial judge in the instant case held a *voir dire* hearing, after which he found that defendant's statements made to Captain Heath while defendant was being fingerprinted were admissible. The trial transcript indicated that Judge Duke stated that he would make find-

ings of fact when the jury was not present, but the record does not indicate if and when the trial court made these findings.

Defendant contends that there was a material conflict of fact as to whether the requirements of *Miranda* were met. We disagree. The statements in question were made after defendant was taken into custody but before he was read his *Miranda* rights. The failure to inform the defendant of his *Miranda* rights does not render the statement inadmissible unless the defendant was in custody and was subject to interrogation. *Ladd*, 308 N.C. at 279, 302 S.E.2d at 169. Interrogation reflects a measure of compulsion above and beyond that inherent in custody itself and is not limited to express questioning by law enforcement officials but extends to " 'any words or actions on the part of the police that the police should have known would be reasonably likely to elicit an incriminating response from the suspect.' " *Id.* at 280-81, 302 S.E.2d at 170 (quoting *Rhode Island v. Innis*, 446 U.S. 291, 300, 64 L. Ed. 2d 297, 307 (1980)).

The evidence presented during *voir dire* shows that there is no material conflict as to whether defendant was being interrogated during his fingerprint processing. Captain Heath simply told defendant that he would talk to him later and answer any questions defendant may have at that time. Even after defendant made the remarks in question, Heath stated that he would talk with defendant later. Captain Heath's comments were not intended nor reasonably expected to elicit an incriminating response from defendant. Prior decisions of this Court are consistent with this conclusion. *See State v. McQueen*, 324 N.C. 118, 377 S.E.2d 38 (1989) (casual conversation between an officer and the defendant, who had been apprehended after a chase, did not constitute an interrogation); *State v. Forney*, 310 N.C. 126, 310 S.E.2d 20 (1984) (casual conversation between the defendant and a deputy where the deputy, asked whether the defendant knew the people in a cell, was held not to be interrogation when the defendant replied that they were the two who broke into the house with him that night). Defendant's fifth assignment of error is rejected.

**[5]** For his third assignment of error, defendant argues that the trial court erred in allowing the State's pathologist to testify during the guilt phase of the trial, over defendant's objection, as to the pain and suffering caused by the wounds to the victims. Defendant contends (1) that there was no proof of the witness' knowledge or qualifications to testify as to the painfulness of the victims' wounds; and

(2) that evidence of the victims' pain and suffering is not relevant in proving any element of the crime and serves solely to inflame the jury in violation of N.C.G.S. § 8C-1, Rule 403. We disagree with both of defendant's contentions.

First, defendant contends that testimony regarding the victims' pain was beyond the scope of the pathologist's expertise. The State's witness, Dr. Butts, Chief Medical Examiner for the State, was qualified as an expert in the field of forensic pathology. Defendant has not contested this. At trial, Dr. Butts defined forensic pathology as the branch of medicine that concerns itself mainly with traumatic injury to the human body caused by violence. We believe that an expert witness qualified in the field of forensic pathology is qualified to testify about the pain caused by a traumatic injury. This decision is consistent with prior case law. *See State v. Bearthes*, 329 N.C. 149, 162, 405 S.E.2d 170, 177 (1991) (holding that the medical examiner was competent to testify about the victim's pain and suffering).

**[6]** Second, defendant contends that the victims' pain and suffering is irrelevant in the guilt phase of a prosecution for murder. We disagree. This Court has held that expert testimony concerning the pain and suffering of the victims in a first-degree murder case is relevant and admissible to assist the jury in ascertaining whether the defendant was acting with premeditation and deliberation. *State v. Morston*, 336 N.C. 381, 397-98, 445 S.E.2d 1, 10 (1994); *see State v. Ginyard*, 334 N.C. 155, 159, 431 S.E.2d 11, 13 (1993); *State v. Bray*, 321 N.C. 663, 671, 365 S.E.2d 571, 576 (1988). In the instant case, defendant was charged with first-degree murder on the grounds of premeditation and deliberation. The evidence was relevant and admissible to show premeditation and deliberation. Accordingly, we reject defendant's third assignment of error.

**[7]** In his fourth assignment of error, defendant contends that the trial court erred by admitting photographs of defendant's automobile without laying the proper foundation. We reject this assignment of error.

At trial, Lillie Brown Artis testified that she had seen a vehicle parked beside Vanessa Craddock's automobile in the parking lot across from her apartment on the night of the murders. Ms. Artis described the automobile as being small and blue with a back similar in shape to an old Toyota automobile. On direct examination, she stated that State's Exhibit 128, a photograph of defendant's automobile, "fairly and accurately depicted" the automobile she saw on that

occasion. She testified that she could use the photograph to illustrate her testimony.

Defendant contends that Ms. Artis' testimony did not indicate that she had any knowledge regarding the identity of the automobile, other than that which she gained from viewing the photograph. Therefore, defendant contends that the State did not lay the proper foundation for the introduction of the photograph.

The Court of Appeals has held that a photograph depicting an automobile that the witness said "looked like" the defendant's automobile was sufficient to authenticate the photograph for the purpose of illustrating the witness' testimony. *State v. Grant*, 18 N.C. App. 722, 197 S.E.2d 898, *cert. denied*, 284 N.C. 122, 199 S.E.2d 661 (1973). In the instant case, Ms. Artis testified that the picture fairly and accurately depicted the automobile she saw on the night of the murders and stated that the photograph would help her illustrate her testimony. The fact that the witness stated that the automobile resembled a Toyota—while defendant's automobile was a Volkswagen—goes to the credibility of the evidence and not to its admissibility.

[8] In defendant's sixth assignment of error, he argues that the trial court erred by denying his motion to dismiss at the conclusion of the State's evidence. Defendant does not contend that there is insufficient evidence to show that the crimes were committed. Instead, defendant contends that the State presented insufficient evidence to support a finding beyond a reasonable doubt that he was the perpetrator of the offenses. In support of his contentions, he asserts that there is no physical evidence placing him at the scene of the crime and that the only eyewitness evidence placing him at the scene is the testimony of Chris Davis, an unreliable witness. As such, defendant contends that the State failed to present substantial evidence that defendant was in fact the perpetrator of the murders. Defendant's contention has no merit.

On a defendant's motion for dismissal on the ground of insufficiency of the evidence, the trial court must determine only whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense. *State v. Vause*, 328 N.C. 231, 236, 400 S.E.2d 57, 61 (1991). What constitutes substantial evidence is a question of law for the court. *Id.* To be "substantial," evidence must be existing and real, not just "seeming or imaginary." *State v. Earnhardt*, 307 N.C. 62, 66, 296 S.E.2d 649, 652 (1982). Substantial evidence is relevant evidence that a reason-

able mind might accept as adequate to support a conclusion. *Vause*, 328 N.C. at 236, 400 S.E.2d at 61. "If there is substantial evidence—whether direct, circumstantial, or both—to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied." *State v. Locklear*, 322 N.C. 349, 358, 368 S.E.2d 377, 382-83 (1988).

In ruling on a motion to dismiss, the trial court must examine the evidence in the light most favorable to the State, and the State is entitled to every reasonable inference that can be drawn therefrom. *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980). The determination of the witnesses' credibility is for the jury. *See Locklear*, 322 N.C. at 358, 368 S.E.2d at 383. "The trial court's function is to determine whether the evidence will permit a reasonable inference that the defendant is guilty of the crimes charged." *State v. Vause*, 328 N.C. at 237, 400 S.E.2d at 61.

The State presented substantial evidence to support a finding that defendant was the perpetrator of the murders of Vanessa Craddock and Rasean Rouse. The State's evidence at trial tended to show that defendant's automobile was parked at Vanessa Craddock's house minutes before the shootings; that defendant was seen striking Vanessa immediately before the shots were heard; that several shots were heard and Rasean was heard crying; that both victims were found dead from gunshot wounds; that after the shots were heard, the blue automobile alleged to be defendant's sped from the Craddock residence; and that defendant told Ms. Lofton that he had just come from "Van's" when he arrived at her residence minutes after the murders were committed. Accordingly, defendant's sixth assignment of error is rejected.

For the foregoing reasons, we conclude that defendant received a fair trial, free from prejudicial error.

NO ERROR.