STATE OF NORTH CAROLINA v. STEVIE CHARLES HENSLEY, Defendant

No. COA08-1485

(Filed 5 January 2010)

**1. Sexual Offenses— minor—sufficiency of findings of fact— conclusions of law**

The findings of fact relevant to the trial court's conclusions of law in a sexual offense with a minor case were supported by competent evidence in the record.

**2. Confessions and Incriminating Statements— custody—failure to advise of *Miranda* rights**

The trial court did not err by suppressing defendant's statements to a detective because defendant was in custody and subjected to interrogation without advisement of his *Miranda* rights at the time he made the statements when the conversation did not remain in the nature of general conversation, but instead moved to defendant's cooperation with the investigation and to comments which were reasonably likely to elicit an incriminating response.

Appeal by the State from order entered 31 July 2008 by Judge Abraham Jones in Superior Court, Alamance County. Heard in the Court of Appeals 18 August 2009.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Amy C. Kunstling, for the State.*

*Paul F. Herzog, for defendant-appellant.*

STROUD, Judge.

This matter is before the Court on the State's appeal from a trial court order allowing Stevie Charles Hensley's ("defendant") motion to suppress statements made on 3 September 2005 to Detective Michael Enoch of the Alamance County Sheriff's Department. The issue presented to this Court for review is whether defendant was, for *Miranda* purposes, subject to interrogation at the time he made incriminating statements to Detective Enoch. For the following reasons, we affirm.

## I. Background

The State's evidence tended to show the following: In September of 2005, Michael Enoch was a detective with the criminal investigations division of the Alamance County Sheriff's Department. On 2 September 2005, Detective Enoch was conducting an initial investigation of allegations of a sexual offense with a minor and had scheduled a time to talk with defendant about those allegations. Defendant did not show up at the scheduled time. Approximately forty-five minutes to an hour after the scheduled time, Detective Enoch received a call from Central Communications dispatch that defendant was in the emergency room at Alamance Regional Medical Center. Detective Enoch went to the hospital that same day and learned that defendant had attempted to overdose, was in the hospital's intensive care unit, and would remain in the hospital at least overnight. Detective Enoch did have an opportunity to talk briefly to defendant, telling him to take care of this medical issue and they would talk later. Detective Enoch stated that he "couldn't tell if [defendant] was just medicated or what" but defendant was coherent. Detective Enoch told the hospital staff to inform him when defendant was ready to be released. The following afternoon, on 3 September 2005, Detective Enoch received a phone call from the hospital stating that defendant was going to be released.

Defendant's contentions raised in his motion to suppress arise from Detective Enoch's contact and discussions with him at the hos-

pital on 3 September 2005 and upon leaving the hospital. We will review the evidence in regard to these contentions in detail below.

On 4 December 2006, defendant was indicted for first degree statutory sexual offense and taking indecent liberties with a child. On 22 July 2008, defendant moved to suppress statements and responses made by defendant on 3 September 2005 to Detective Michael Enoch. Following a suppression hearing on 28 July 2008, the trial court orally granted defendant's motion and entered a written order on 31 July 2008, making findings of fact and conclusions of law. The State gave oral notice of appeal in open court and filed written notice of appeal on 1 August 2008.

## II. Motion to Suppress

When evaluating a trial court's ruling on a motion to suppress, its findings of fact will be binding on appeal if supported by competent evidence. *State v. Barden,* 356 N.C. 316, 332, 572 S.E.2d 108, 120-21 (2002), *cert. denied,* 538 U.S. 1040, 155 L. Ed. 2d 1074 (2003). The trial court's findings of fact must support the conclusions of law, *State v. Tadeja,* 191 N.C. App. 439, 443, 664 S.E.2d 402, 406-07 (2008), and the conclusions of law are reviewable *de novo. State v. Icard,* 363 N.C. 303, 308, 677 S.E.2d 822, 826 (2009) (citation omitted). Our Appellate Courts "accord[] great deference to the trial court in this respect because it is entrusted with the duty to hear testimony, weigh and resolve any conflicts in the evidence, find the facts, and, then based upon those findings, render a legal decision . . . ." *State v. Cooke,* 306 N.C. 132, 134, 291 S.E.2d 618, 619-20 (1982).

[1] The State contends that the trial court's findings of fact nine, twelve, fourteen, fifteen, eighteen, nineteen, twenty-one, and twenty-two are not supported by competent evidence in the record. As only some of these findings are relevant to the trial court's ultimate conclusion regarding the defendant's statements to Detective Enoch on 3 September 2005, we will address only those findings. We treat findings of fact which do not add to nor take away from the trial court's ultimate conclusion as mere surplusage. *See State v. King,* 222 N.C. 137, 141, 22 S.E.2d 241, 244 (1942) (Evidence that "would neither add to nor take from the sufficiency of the proceedings" would be treated as mere surplusage by the appellate court.).

The trial court in its order made the following relevant findings contested on appeal:

15. After a considerable amount of time waiting for the hospital to discharge the Defendant, Detective Enoch eventually took

Defendant into custody, arrested him, and placed him into the patrol car. The Defendant was taken from the hospital in a wheelchair and the detective acknowledged that he needed to assist the Defendant out of the wheelchair and help him into the back seat of the patrol car. Detective Enoch was not sure whether the Defendant was still groggy mentally from the suicide attempts and medications he received or if he was just very stiff from having been laying in bed on his back for more than twenty-four hours.

. . . .

18. Detective Michael Enoch acknowledged that sometime during that conversation he did say something to the effect to the Defendant that what he had to say was not going to be on the record and that he would hope that the Defendant would continue to cooperate even though he had been arrested; and, the detective inquired whether or not the Defendant would agree to speak with him the next day which would have been Sunday, September 4, 2005, if Detective Enoch came in to work overtime to get a statement from him.

19. Detective Enoch indicated that he knew the Defendant from prior dealings when he investigated an alleged child molestation case involving a Michael Thompson against the same victim, K.G. the year before; and that the Defendant was alert and oriented during that investigation; that he spoke with the Defendant on or about July 12, 2005 and the Defendant appeared to be in a sober state and alert and not disoriented at that conversation but when he contacted the Defendant on September 2, 2005 the Defendant was very disoriented and talking like he was on medication; and, that on September 3, 2005 the Defendant was not talking as clearly as he had on those other previous contacts that the officer had with him but that he was responsive to his general statements and comments to the Defendant.

. . . .

22. That the Defendant allegedly made the statement, 'Mike I do not want you to think that I am a bad person, but I do not find anything sexual about children, but I was drinking very heavily and smoking pot and I guess the combination of the two will make a guy do something he normally would not do[.]'

After a thorough review of the record, we hold that the findings of fact relevant to the trial court's conclusions are supported by competent evidence in the record.

Detective Enoch testified that he knew defendant from a previous case and had interviewed defendant on two prior occasions. As a result, Detective Enoch had established a rapport with defendant.

On 3 September 2005, when Detective Enoch went to the hospital to serve arrest warrants on defendant and take him into custody, he had to wait for defendant to be released from the hospital. At the hospital, Detective Enoch spoke to defendant, telling him that he "was really concerned about his health, [and] . . . there was no problem [defendant] could have that would be worth trying to take his own life." Detective Enoch then told defendant that he was going to be charged with the offenses on the arrest warrant, first degree statutory sexual offense and sex offense in a parental role. Defendant asked Detective Enoch to explain the situation to his parents, and Detective Enoch did so. When defendant was ready to be released from the hospital, Detective Enoch took defendant into custody. Detective Enoch testified that defendant seemed "a little weak" and "a little medicated," enough so that Detective Enoch had to help defendant into his patrol car. Detective Enoch did not advise defendant of his *Miranda* rights when he took him into custody. Detective Enoch transported defendant to the Sheriff's Department. While waiting for defendant to be released from the hospital and on the way to the Sheriff's Department, Detective Enoch and defendant had "[a] lot of casual conversation." Detective Enoch told the defendant he "was glad he was feeling better" and "was glad he didn't succeed in trying to kill himself." Detective Enoch admitted that on the drive to the Sheriff's Department, defendant still seemed "a little medicated" but still "very coherent" and "understood what was going on." Detective Enoch explained to defendant that he wanted to talk with defendant, but due to his family obligations, he could not that day. Detective Enoch told defendant that he was not even going to advise defendant of his rights; "did not want to talk to [defendant] about anything[;]" "did not want to go on the record with anything[;]" they were not talking about the case; but were just going to take care of the paperwork. Detective Enoch then told defendant "that [he] was in trouble with [his] wife for having to come in to work [on] a Saturday afternoon." Detective Enoch explained that "I would sometimes use the I should be at home with my family but I'm here having to talk to you to build the rapport[,] to let them know that I felt like talking to them was

important." Defendant "at some point actually apologized one time for [Detective Enoch] having to leave [his] family event to come get [defendant]." Detective Enoch also informed defendant that he would tell the prosecutor if defendant was cooperative with the investigation. Detective Enoch followed up by asking defendant "if he wanted [Detective Enoch] to come back the next day[.]" Defendant responded by stating that "at the time that he just didn't want [Detective Enoch] to think that he was a bad person, that when you start drinking alcohol and smoking marijuana you do things you normally would not do." Defendant then told Detective Enoch that he would talk further with him on the following day.

Detective Enoch explained that it was not his intent in the car on the way to the Sheriff's Department to get defendant to confess. Detective Enoch stated that it was his

> sole intent . . . to find out if [he] needed to come back the next day on a Sunday and get the overtime. At that time the Sheriff's Department was kind of cracking down on overtime. [Detective Enoch] didn't want to, frankly, come into work if defendant was not going to talk to [him].

On Sunday, 4 September 2005, Detective Enoch went in to work to interview defendant. Detective Enoch read defendant his *Miranda* rights and defendant stated that he did not want to talk to Detective Enoch without a lawyer. Detective Enoch confirmed that when he saw defendant in the hospital on 2 September 2005, defendant seemed medicated or drugged. The next day, 3 September 2005, defendant seemed more responsive. On 4 September 2005, defendant seemed the most responsive and clearest when Detective Enoch read defendant his *Miranda* rights and he refused to talk without first speaking to an attorney. Detective Enoch stated that while he was taking defendant to the Sheriff's Department on 3 September 2005, defendant did not appear to be so "intoxicated" as to not know what he was doing or completely incoherent as to not understand what was going on around him.

Jean Usher ("Ms. Usher") a registered nurse at Alamance Regional Medical Center testified that she was working in the emergency room on 2 September 2005, where she saw defendant as a patient. Ms. Usher stated that defendant presented as drowsy and hard to arouse, and he did not spontaneously answer her questions. Ms. Usher gave defendant a sternal rub, checking his responsiveness by rubbing her knuckles across his sternum. After the sternal rub,

defendant became responsive and answered her questions. Ms. Usher described defendant's condition after the sternal rub as conscious but disoriented. Defendant told Ms. Usher that he took a bottle of Xanax and had beer that day, but he didn't remember how much. Ms. Usher saw the empty Xanax bottle, which was dated September 2nd and the prescription was for forty pills. Defendant also stated that he took the antidepressant Zoloft, Prevacid, and the sleeping pill Halcion. Defendant was given Romazicon to counter the effects of Xanax, and Ms. Usher stated that it usually does not take long to work.

Defendant testified that on 2 September 2005 he attempted suicide by taking forty Xanax pills and then drinking a six-pack of beer. Defendant testified that he had a prescription for Zoloft for depression, and Halcion, a sleeping pill. After taking the Xanax, defendant shot a rifle in the air two or three times, and he did not remember anything until the next day when he was in the hospital. Defendant stated that he did not "remember a lot of anything from—actually through the 3rd, everything is kind of hazy and every-thing was pretty clear when I woke up in jail on the 4th." Defendant stated that on the 3rd before he was released from the hospital that he remembered people coming into his intensive care room and talk-ing to him but he did not really remember what was discussed. Defendant said that he "[v]aguely" remembered going to jail in the police car but stated that he remembered Detective Enoch telling him "off the record, I can help you if you'll work with me. I can get you a lighter sentence." Defendant stated that while riding in the car he "felt hazy, groggy. Kind of like when you've been asleep for a long time and you wake up, and . . . you can't take in everything all at one time." Defendant stated that he did not remember saying to Detective Enoch, "I don't want you to think I'm, you know, a person who gets sexual interest in children."

As the trial court's relevant findings of fact are supported by com-petent evidence in Detective Enoch's testimony about his interactions and conversations with defendant on September 2nd and 3rd and the testimony of Ms. Usher and defendant, they are binding on appeal. *Barden*, 356 N.C. at 332, 572 S.E.2d at 120-21. The remaining findings of fact not challenged on appeal "are deemed to be supported by com-petent evidence and are binding on appeal." *State v. McLamb*, 186 N.C. App. 124, 125, 649 S.E.2d 902, 903 (2007) (citation and quotation marks omitted), *disc. review denied*, 362 N.C. 368, 663 S.E.2d 433 (2008). The State's assignments of error as to the trial court's findings of fact are overruled.

**[2]** The State next contends that the findings of fact do not support the trial court's conclusion that (1) a reasonable officer would expect defendant to give a response to Detective Enoch's comments to defendant; (2) this statement by the defendant was made as a result of custodial interrogation by Detective Enoch; (3) Detective Enoch's statements were made to elicit an incriminating response and are therefore interrogation; (4) Detective Enoch elicited defendant's incriminating response; and (5) Defendant was subjected to interrogation without being advised of his *Miranda* rights.

Although the State identifies all of these statements as conclusions of law, some are findings of ultimate fact and are supported by the findings of fact as discussed above and some are conclusions of law. Our Supreme Court has stated that

> [u]ltimate facts are those found in that vaguely defined area lying between evidential facts on the one side and conclusions of law on the other. (Citations omitted.) In consequence, the line of demarcation between ultimate facts and legal conclusions is not easily drawn. (Citation omitted.) An ultimate fact is the final resulting effect which is reached by processes of logical reasoning from the evidentiary facts. (Citations omitted.) Whether a statement is an ultimate fact or a conclusion of law depends upon whether it is reached by natural reasoning or by an application of fixed rules of law. (Citations omitted.)

*Quick v. Quick*, 305 N.C. 446, 451-52, 290 S.E.2d 653, 657-58 (1982) (citation and quotation marks omitted). " '[A]s a general rule, . . . any determination requiring the exercise of judgment or the application of legal principles is . . . properly classified a conclusion of law.' " *State v. Sparks*, 362 N.C. 181, 185, 657 S.E.2d 655, 658 (2008) (citation omitted). Here, the only identified "conclusion" that requires application of law is that Detective Enoch elicited the incriminating statements from defendant by custodial interrogation. The remaining "conclusions" identified by the State are ultimate facts upon which the above conclusion of law is based. The remaining analysis will address the legal conclusion that Detective Enoch elicited the incriminating statements from defendant by custodial interrogation.

A defendant's statement made "from custodial interrogation [is] admissible at trial only if, prior to questioning, the defendant has been fully advised of his rights to remain silent and to have counsel present during questioning. " *State v. Braxton*, 344 N.C. 702, 708, 477 S.E.2d 172, 175 (1996) (citing *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d

694 (1966)). "The *Miranda* Court defined 'custodial interrogation' as 'questioning initiated by law enforcement officers after a person has been taken into custody or deprived of his freedom of action in any significant way.' " *State v. Crudup,* 157 N.C. App. 657, 659, 580 S.E.2d 21, 24 (2003) (quoting Miranda, 384 U.S. at 444, 16 L. Ed. 2d at 706). The trial court's third conclusion of law states that defendant was in custody for *Miranda* purposes at the time he made the incriminating statements to Detective Enoch and the State at trial and in its brief does not challenge this conclusion. Therefore, the issue in this case is whether defendant was, for *Miranda* purposes, subjected to interrogation at the time he made incriminating statements to Detective Enoch.

Our Supreme Court has held that "[t]he term 'interrogation' is not limited to express questioning by law enforcement officers, but also includes 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.' " *State v. Golphin,* 352 N.C. 364, 406, 533 S.E.2d 168, 199 (2000) (quoting *Rhode Island v. Innis,* 446 U.S. 291, 301, 64 L. Ed. 2d 297, 308 (1980)), *cert. denied,* 532 U.S. 931, 149 L. Ed. 2d 305 (2001).

> The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the *Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police.

*Innis,* 446 U.S. at 301, 64 L. Ed. 2d at 308. "However, the intent of the police is relevant, 'for it may well have a bearing on whether the police should have known that their words or actions were reasonably likely to evoke an incriminating response." *State v. Washington,* 102 N.C. App. 535, 538-40, 402 S.E.2d 851, 853-55 (1991) (Greene, J., dissenting) *rev'd per curiam by* 330 N.C. 188, 410 S.E.2d 55-56 (adopting J. Greene's dissent). Other factors relevant to the determination of whether police 'should have known' their conduct was likely to elicit an incriminating response include: "whether the 'practice is designed to elicit an incriminating response from the accused[;]' " and " '[a]ny knowledge the police may have had concerning the unusual susceptibility of a defendant to a particular form of persuasion . . . .' " *State v. Fisher,* 158 N.C. App. 133, 143, 580 S.E.2d 405, 413 (2003) (quoting

*Innis*, 446 U.S. at 302, 64 L. Ed. 2d at 308 (1980) (fn. 7, 8)), *aff'd per curiam*, 358 N.C. 215, 593 S.E.2d 583 (2004). "Interrogation may take the form of either express questioning or its functional equivalent." *Washington*, 102 N.C. App. at 539, 402 S.E.2d at 854 (citation and quotation marks omitted).

The findings of fact support the trial court's conclusion that defendant was subjected to interrogation and made his incriminating statements in response to the interrogation. As to whether Detective Enoch 'should have known' his conduct was likely to elicit an incriminating response from defendant, the trial court's findings of fact support that Detective Enoch's conduct may have been designed to elicit an incriminating response from the accused. *Fisher*, 158 N.C. App. at 143, 580 S.E.2d at 413. After telling the defendant that their conversation was not going to be "on the record[,]" Detective Enoch moved the conversation to the topic of defendant's cooperation with the investigation. *See State v. Rollins*, 189 N.C. App. 248, 262, 658 S.E.2d 43, 52 (2008), *reversed on other grounds by*, 363 N.C. 232, 675 S.E.2d 334 (2009) (The trial court held that an officer's question was reasonably likely to elicit an incriminating response from defendant when the officer had prior knowledge that defendant had committed murder, engaged defendant in a conversation, and "steered the conversation to a topic which, if discussed by Defendant, was likely to elicit an incriminating statement."). The State argues that Detective Enoch's question "if [defendant] wanted [him] to come back the next day" was only to find out if Detective Enoch needed to come into work the next day or not. However, the only reason Detective Enoch was trying to determine if he should come into work the next day, thereby incurring overtime expenses, was to see if it would be worthwhile for him to come to work, and for Detective Enoch, it would have been worthwhile only if defendant would be willing to give a statement regarding the charges against him. Such comments would reasonably call for an answer from defendant stating that defendant would not cooperate, defendant would cooperate or defendant could show his cooperation by immediately giving a statement, as he did here. Detective Enoch received defendant's cooperation, as requested.

The trial court's findings also support that Detective Enoch had "knowledge . . . concerning the unusual susceptibility of a defendant to a particular form of persuasion . . . .' " *Fisher*, 158 N.C. App. at 143, 580 S.E.2d at 413. Detective Enoch knew that defendant was peculiarly susceptible to an appeal to defendant's relationship with Detective Enoch from his previous interviews and dealings with

defendant. Detective Enoch knew defendant, had interviewed defendant at least two times before in a previous case, and as a result had established a rapport with defendant, enough so that defendant asked Detective Enoch to tell his parents in the hospital that he would be charged in this case. Detective Enoch acknowledged that he was attempting to build on his rapport with defendant during his conversations with defendant. Detective Enoch was aware that defendant valued his opinion of defendant, and defendant even stated before making the incriminating statements that "he just didn't want [Detective Enoch] to think he was a bad person[.]" However, more importantly, Detective Enoch knew that defendant was still under the effects of the attempted overdose on prescription medication and alcohol and would therefore be peculiarly susceptible to persuasion. On 3 September 2005, defendant still seemed "a little weak" and "a little medicated" to Detective Enoch, enough so that Detective Enoch had to help defendant into his patrol car. *See Innis*, 446 U.S. at 302-03, 64 L. Ed. 2d at 309 (1980) (While evaluating whether the officers were aware if defendant was peculiarly susceptible to a form of persuasion, the Court noted whether the police knew that defendant "was unusually disoriented or upset at the time of his arrest.")

As to the intent of the police, *Washington*, 102 N.C. App. at 539, 402 S.E.2d at 854, Detective Enoch stated that it was not his intent to get a confession from defendant on 3 September 2005. However, Detective Enoch testified that he wanted a response from defendant regarding his cooperation with the investigation. Also, as the focus of the definition of interrogation is on the suspect's perceptions, *Innis*, 446 U.S. at 301, 64 L. Ed. 2d at 308, defendant testified that during the car ride to the Sheriff's Department he knew Detective Enoch was "talking to me and trying to get me to, you know—I could tell he was trying to get me to talk . . . ."

Under these circumstances, the trial court properly concluded that defendant was subjected to interrogation by Detective Enoch and this interrogation elicited defendant's incriminating statements.

The State cites *State v. Vick*, 341 N.C. 569, 461 S.E.2d 655 (1995), *State v. Forney*, 310 N.C. 126, 310 S.E.2d 20 (1984) and *State v. McQueen*, 324 N.C. 118, 377 S.E.2d 38 (1989) in support of its argument that Detective Enoch's statements to defendant were not statements that Detective Enoch should have known were reasonably likely to elicit an incriminating response from defendant and therefore were not custodial interrogation. As these cases are distinguish-

able from the facts in this case, we are not persuaded by the State's contentions.

In *State v. Vick*, the defendant was arrested but had not been advised of his *Miranda* rights. 341 N.C. 569, 578, 461 S.E.2d 655, 660 (1995). While defendant was being processed at the Sheriff's Department, a deputy told the defendant he would like to talk to the defendant after the fingerprinting was complete and would answer at that time any questions defendant had concerning his arrest. *Id.* at 578, 461 S.E.2d at 660. In response, the defendant made incriminating statements, and the deputy then repeated his statement that he would answer defendant's questions when processing was completed and left the room. *Id.* Our Supreme Court ruled that the deputy's statements "were not intended nor reasonably expected to elicit an incriminating response from defendant," and did not constitute interrogation. *Id.* at 581, 461 S.E.2d at 662.

In *State v. Forney*, the sheriff was taking defendant from the jail to the courthouse for his preliminary hearing. 310 N.C. 126, 130, 310 S.E.2d 20, 22 (1984). As the sheriff was escorting defendant through the jail, they passed a cell containing two inmates and the sheriff asked defendant, "Do you know these two fellows?" *Id.* In response, defendant made incriminating statements. *Id.* "No other conversation took place as they passed and they 'walked right on out.' " *Id.* at 131, 310 S.E.2d at 23. The trial court held that the sheriff's question did not constitute "interrogation" and defendant's response was admissible. *Id.* at 131, 310 S.E.2d at 23.

Here, the record shows that unlike the officers in *Vick* or *Forney*, Detective Enoch had a series of conversations before defendant was read his *Miranda* rights and while he was in custody. Additionally, unlike *Vick or Forney*, after telling defendant they were not talking about the case, Detective Enoch continued talking about defendant's cooperation with the investigation and ended with a question that could reasonably be expected to elicit an incriminating response from defendant. Therefore, *Vick* and *Forney* are not applicable.

In *State v. McQueen*, 324 N.C. 118, 127, 377 S.E.2d 38, 44 (1989), the officer asked defendant as he was escorting defendant out of a river gorge, "I guess you're tired and hungry[,]" and "if he had come all the way down the river[?]" Defendant answered the officer's questions, but then asked a question to the officer and made incriminating statements. *Id.* However, defendant had been advised of his *Miranda* rights prior to the officer's statements to defendant and defendant

argued that he invoked his Fifth Amendment right to counsel imme-diately after being read his *Miranda* rights and the officer's questions amounted to interrogation in contravention to his *Miranda* rights. *Id.* at 128, 377 S.E.2d at 44. The trial court held that the statements by defendant were not the result of interrogation because the officer's questions were "in the nature of general conversation[,]" taking place during rest periods during the climb out of the river gorge, and not of a kind which the officer should have known were reasonably likely to elicit incriminating responses. *Id.* at 129, 377 S.E.2d at 45. Like the officer in *McQueen*, Detective Enoch carried on "casual conversa-tion" with defendant. Unlike *McQueen*, Detective Enoch's conversa-tion with defendant did not remain in the "nature of general con-versation" as he moved the conversation to defendant's cooperation with the investigation and to comments which were reasonably likely to elicit an incriminating response. Therefore, *McQueen* is not appli-cable here.

As defendant here was in custody and subjected to interrogation without advisement of his *Miranda* rights at the time defendant made statements to Detective Enoch, the trial court properly suppressed defendant's statements to Detective Enoch.

### III. Conclusion

Accordingly, we hold that there was competent evidence sup-porting the trial court's findings of fact and the trial court's findings of fact support the trial court's conclusions of law. Therefore, we affirm the trial court's order suppressing statements made by de-fendant on 3 September 2005 to Detective Michael Enoch of the Alamance County Sheriff's Department.

AFFIRMED.

Judges WYNN and BEASLEY concur.